UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------

In re:

Robert G. Blanchard,

                              Debtor(s).

Chapter 7
Case No.: 12-11086

------------------------------------------------------------------
Emma P. Cottini,

                              Plaintiff(s),

            v.

Robert G. Blanchard,

                              Defendant(s).

Adv. No.: 13-90004

------------------------------------------------------------------

APPEARANCES:

Deily & Glastetter, LLP
*Attorneys for Plaintiff*
8 Thurlow Terrace
Albany, NY 12203

Leigh A. Hoffman, Esq.
Stacy M. Metro, Esq.

David P. Dylis, Esq.
*Attorney for Defendant*
PO Box 487
Amsterdam, NY 12010

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION & ORDER

Currently before the court is an adversary proceeding filed by Emma Cottini ("Plaintiff" or "Creditor") against Robert G. Blanchard ("Debtor" or "Defendant") requesting denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3) or, in the alternative, a determination of the dischargeability of a certain debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (4).

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(I) and (J), and 1334(b).

1

## FACTS

The Debtor filed a voluntary petition seeking relief under Chapter 7 on April 24, 2012. The only non-exempt assets scheduled in the Debtor's petition are a bank account with a balance of less than one dollar and a 1991 truck worth $150.00 because of high mileage and its condition. (Pl.'s Ex. 1.) The Plaintiff is listed on Schedule D of the petition and on the Statement of Financial Affairs as holding an unsecured claim in connection with a contract dispute. (Pl.'s Ex. 1.) Schedule I indicates the Debtor's monthly net income is $1,620.00 consisting of rent ($500.00) and social security income for himself ($1,013.00) and his daughter ($607.00). On September 23, 2013, the Chapter 7 trustee filed a Report of No Distribution indicating that he determined that there were no non-exempt assets to be administered on behalf of creditors. (Bankr. Case No. 12-11086, Report of No Distribution, Sept. 23, 2013.)

On February 06, 2013, the Plaintiff filed the instant complaint. The complaint alleges, *inter alia* that, the Defendant failed to keep or preserve records pursuant to § 727(a)(3) regarding the home he constructed for the Plaintiff (the "House); the Defendant made false statements to Ms. Cottini in connection with the construction of the House; and the Defendant breached his fiduciary duties under N.Y. Lien Law § 71. The Defendant filed an answer on March 8, 2013, denying the material allegations of the complaint and asserting a counterclaim for attorney's fees. The Plaintiff filed a motion for summary judgment on both her §727 and § 523 causes of action. After oral argument on May 8, 2013, the court denied the motion, and the parties proceeded to trial.

The trial was held on August 13, 2013. The Debtor was the only witness called to testify by the Plaintiff. Although now retired, the Debtor testified that he was previously a "designer of buildings." (Trial Tr. 10, Sept. 27, 2013, ECF No. 34.) The Debtor holds no certifications or

licenses; his formal training is limited to three and a half years at the Boston Architectural Center. (Trial Tr. 9-10.) According to the Defendant, as a designer of buildings, he would "work with clients to determine what their desires and needs are and try to translate that into a design of the building that they are trying to build." (Trial Tr. 10.) He testified that he has designed "roughly" 400 homes. (Trial Tr. 10.)

In recent years the Defendant decided to specialize in the design of "healthy and efficient solar houses." (Trial Tr. 11.) The Defendant testified that he had only completed drawings of five such houses, with the House being one of the five. (Trial Tr. 11.) The Defendant intended to showcase the House as a healthy, green, solar home. (Trial Tr. 12.) The Plaintiff paid the Debtor $16,000.00 to draw up the plans for the House. Based on the plans, the Defendant was employed by the Plaintiff as the general contractor for the construction of the House. When asked if he was qualified to act as the general contractor based on his design experience he answered, "I thought so." (Trial Tr. 13.) The Debtor explained that he had constructed three homes during his career, two for himself and the third for the Plaintiff. (Trial Tr. 13.) The Debtor commenced work on the House in December 2009. The Debtor's services were terminated in October 2010 because the Plaintiff was frustrated with the pace at which the House was being built.[1] (Trial Tr. 20-21.) When the Debtor was removed from the project, the House was ninety percent complete. (Trial Tr. 22.) It is undisputed that the House was the only construction project that the Debtor worked on in 2009 and 2010.

According to the construction contract between the parties, the Defendant was to build the House, with certain environmental specifications, for the price of $215,000.00. (Trial Tr. 18; Pl.'s Ex. 7.) Of the original $215,000.00 contract price, $201,879.39 was actually advanced to

---

[1] The Plaintiff filed an action in the New York State Supreme Court for Columbia County entitled *Emma Cottini v. Robert Blanchard a/k/a/ Robert Blancha*, Index No. 3527/2011. This action was stayed by the Debtor's bankruptcy filing.

3

the Defendant. (Trial Tr. 27-28; Pl.'s Ex. 9.) Some of the funds received from the Plaintiff were deposited in a checking account at the Bank of Greene County. (Trial Tr. 25; Pl.'s Exs. 9 and 11.) However, not all of the checks the Defendant received from Plaintiff were deposited with a bank, many were simply cashed. The Defendant stated that he cashed Plaintiff's checks at multiple banks. (Trial Tr. 27-28.) The cash was then used to pay invoices and purchase materials associated with the construction of the House. (Trial Tr. 29, 34.)

The only records retained by the Defendant in connection with the construction of the House were some of the invoices and receipts, bank records, and tax returns, all of which were introduced into evidence by Plaintiff. (Trial Tr. 42, 43; Pl.'s Ex. 9, 11, 12, and 13.) The Debtor produced seventy invoices related to the construction of the House. (Pl.'s Exs. 12 and 14.) Some of the invoices appear to be duplicates. (Pl.'s Exs. 12 and 14.) The Debtor admits there are holes in his bookkeeping. (Trial Tr. 13.) Of the over $200,000.00 advanced to the Debtor by the Plaintiff, he only had receipts and invoices totaling about $40,000.00. (Trial Tr. 41.) The Defendant testified that he did not keep many of the subcontractors' invoices once they were paid. (Trial Tr. 29.) He explained that "when people would either give me an invoice or verbally tell me how much I owed them it was a pre-agreed amount and I would give them cash usually." (Trial Tr. 29.) The Debtor also indicated that he rarely received receipts from his subcontractors and, when he did, he typically did not retain them. (Trial Tr. 29, 34.)

On direct examination, the Defendant was asked if it was his practice to keep any other records or paperwork when he constructed a house. The Debtor answered, "No. You have to remember that two of those were for me. So I didn't have a need for the paperwork. When I built Cottini's then I should have kept paperwork but I didn't because I wasn't used to it." (Trial Tr. 13.)

4

While the House was under construction, the Debtor allocated nearly all his time to the project. (Trial Tr. 23.) The Debtor's tax returns for 2009 and 2010 reveal that his gross income for that two year period was $250,000.00. (Trial Tr. 25; Pl.'s Ex. 13.) Approximately $200,000.00 of that income came from construction of the House. The Debtor testified at trial that he prepared his tax returns himself and, despite not having all of the receipts to verify his transactions, he was confident in his calculations of gross income and any business deductions. (Trial Tr. 56.) The Plaintiff did not offer anything to refute this testimony.

Four mechanics liens were filed against the House. (Trial Tr. 34-36.) The Defendant testified that the $13,000.00 Mrs. Cottini refused to advance to him would have paid off these liens. (Trial Tr. 35-36.) However, the Debtor's bank records for the House indicate that the Debtor received notice of an overdraft in 2009; the Debtor could not recall the circumstances surrounding the overdraft. (Trial Tr. 40.)

On cross examination, the Debtor was asked why he did not provide all the documents that had been requested by the Plaintiff in discovery. The Debtor replied that "[m]y life has been in turmoil. I went through a divorce I think two years ago." (Trial Tr. 50.) He further stated that it was his custom to pay in cash. (Trial Tr. 51.) Additionally, he testified that, to his knowledge, he did not have any other documents requested by Plaintiff that had not been turned over. (Trial Tr. 53.)

## ARGUMENTS

The Plaintiff argues that the Debtor kept inadequate records for her to be able to reconstruct what happened with the money she advanced to him for the construction of the House. Without this information, Plaintiff asserts she cannot ascertain what work the Debtor failed to pay for and who may hold mechanics liens against the House. She further contends that

5

the Debtor has given no reasonable justification for his failure to keep these records and, accordingly, this court must deny his discharge.

The Debtor argues that the Plaintiff cannot demonstrate that he intended to destroy or hide any records related to the construction of the House. He also submits that he complied with the Plaintiff's discovery requests to the best of his ability. Ultimately, he posits that the best record of his dealings with the Plaintiff is the constructed House itself.

## DISCUSSION

Consistent with the fresh start policy under the Bankruptcy Code, the extreme penalty for wrongdoing in § 727 must be construed strictly against those who object to the debtor's discharge and liberally in favor of the debtor. *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996) (internal quotations omitted)). Under § 727(a)(3) the court shall grant a debtor that files under Chapter 7 of the Bankruptcy Code a discharge unless:

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

A creditor objecting to a debtor's discharge under § 723(a)(3) has the initial burden to show that the debtor failed to keep adequate books or records from which the debtor's financial condition or business transactions might be ascertained. *In re Cacioli*, 463 F.3d at 235 (citing *White v. Schoenfeld*, 117 F.2d 131, 132 (2d Cir. 1941)). It must be demonstrated that the missing records are necessary to ascertain the debtor's financial condition during the pendency of the bankruptcy proceeding and a reasonable time before the filing of the bankruptcy petition. *Berger*

6

*& Assocs. Attorneys, P.C. v. Kran (In re Kran)*, No. 13-1931, 2014 WL 3685939, at *2 (2d Cir. July 25, 2014). Additionally, a creditor must show that the debtor failed to create, maintain and/or preserve the complement of business and personal records that would be expected of a reasonably prudent person in the [d]ebtor's position. *See In re Cacioli*, 463 F.3d 229, 235. Whether adequate records have been kept is a case-by case determination, and the sufficiency of a debtor's record keeping is a matter of judicial discretion. *Geltzer v. Cohen (In re Cohen)*, Case No. 01-11748, Adv. No. 01-03570, 2007 WL 710199, at *5 (Bankr. S.D.N.Y. Mar. 6, 2007) (citing *In re Joseph*, Case No 91-CV-1114, 1992 WL 96324, at *3 (N.D.N.Y. Apr. 22, 1992)). The more sophisticated debtor will be held to a higher standard of accountability; a debtor that engages in a series of complex business transactions will be expected to produce a greater number of and more detailed financial records. *In re Sethi*, 250 B.R. 831, 839 (E.D.N.Y. 2000). There is no requirement that a plaintiff demonstrate intent under § 727(a)(3); they simply must show that the debtor's records are not reasonable under the circumstances. *In re Jacobowtiz*, 309 B.R. 429, 440 (S.D.N.Y. 2004).

If the creditor shows an absence of records, the burden falls upon the debtor to satisfy the court that his failure to produce them was justified. *Id*. In determining whether a debtor has a reasonable justification for his incomplete records courts use several factors:

> (1) Whether a debtor was engaged in business and, if so, the complexity and volume of the business; (2) the amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience and sophistication; (5) the customary business practices for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor.

*In re Sethi*, 250 B.R. at 838 (citing *In re Frommann*, 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993)). However, the court need only enter into an analysis of these factors to the extent that they are relevant to the debtor's stated justification. *In re Cacioli*, 463 F.3d 237.

The Second Circuit recently clarified the scope of § 727(a)(3). In *Kran*, the debtor, an attorney, filed for Chapter 7 relief. *In re Kran*, 2014 WL 3685939, at *1. A creditor, another attorney, brought an adversary complaint objecting to discharge under § 727(a)(3). The adversary proceeding was premised on the theory that the debtor's failure to keep documents related to a referral agreement made it impossible for the creditor to ascertain the debtor's business transactions and, thus, the amount of fees owed to the creditor. The Second Circuit agreed with the District Court and Bankruptcy Court's granting of summary judgment for the debtor. The Second Circuit reasoned that § 727(a)(3), like other paragraphs of § 727(a), is meant to "punish actions that hamper the Trustee's ability to collect and distribute non-exempt assets on behalf of creditors." *Id.* at *4 n. 2. Section 727(a) "bars from relief a debtor whose misconduct threatens to undermine the just and orderly administration of his bankruptcy . . . it does not exist to police the debtor's legal and ethical obligations more generally." *Id.* at *4. Even if a debtor has an independent legal obligation to keep certain documentation or records, the absence of such records, standing alone, is insufficient to invoke § 727(a)(3). *Id.* at *3. The importance of the records under § 727(a)(3) lies in their necessity to ascertain the Debtor's financial condition. In no case shall the "extreme penalty" of denying a discharge be invoked when the debtor's failings are clearly unconnected with the bankruptcy proceeding. *Id*. at *3.

The collection and distribution of non-exempt assets by a liquidating trustee is the *sine qua non* of a Chapter 7 bankruptcy. When a debtor interferes with a case trustee's administration of the estate, § 727(a) provides multiple grounds to deny the debtor a discharge. The evidence

8

produced by Plaintiff does not implicate the Debtor's bankruptcy estate; rather it encompasses a two party dispute between the Debtor and Plaintiff. Cottini has not provided evidence to establish that either the Debtor failed to keep records such that his financial condition or business transaction could not be ascertained during the pendency of the proceedings or for a reasonable time before; or that she or the Chapter 7 trustee were impeded in determining whether the Debtor had other assets that could be used to pay creditors.[2] *Id.* Under *Kran*, without making this showing the Plaintiff cannot meet her burden.

Cottini alleges that she cannot create a complete accounting of the Debtor's payments to subcontractors. As the Second Circuit has explained, however, difficulty in tracing cash payments, in and of itself, does not bring a two party dispute within § 727(a)(3). *In re Kran*, at *3. The Plaintiff also alleges that the Debtor's failure to keep records of his payments to subcontractors is a violation of New York Lien Law. *See* NY Lien Law Art. 3-a, §§ 70 and 75 (McKinney 2013). On the present facts, there is no reason for this court to take up the Lien Law analysis. The scope of liability under state law does not define a debtor's obligations and responsibilities vis-a-via disclosures in bankruptcy. Section 727(a)(3) does not exist to police a debtor's legal obligations generally. Section 727 is directed toward protecting the integrity of the bankruptcy system. While the Plaintiff has demonstrated that the Debtor's record keeping is less than stellar, there is nothing about the Debtor's poor recording keeping that implicates his bankruptcy estate. The presence or absence of records related to the House has no bearing on the Debtor's bankruptcy estate.

---

[2] The Creditor suggests in her post-trial submissions that the Debtor may have absconded with $160,000.00 of the $200,000.00 originally advanced to him. There are no allegations in the complaint and no evidence in the record to suggest that the Debtor took for himself any such sum of money. The Debtor lists his income and expenses, including the costs of goods and labor, on Schedule C of his income tax returns for 2009 and 2010. The Creditor introduced the tax returns into evidence and never challenged the accuracy or veracity of any of the numbers on the returns. If the Debtor accurately reported all of his business income on his tax returns, and based upon the record the court must reason that he did, then the court cannot conclude that the Debtor absconded with funds.

Here, there is no bankruptcy purpose in understanding the relationship between the Debtor and his subcontractors on a construction project which ended more than eighteen months before the Debtor sought bankruptcy relief.  Stated another way, the Plaintiff cannot explain how any records that were not produced pertain to whether the Debtor currently has assets or funds to pay his creditors.  In fact, the Chapter 7 Trustee filed a Report of No Distribution in the Debtor's bankruptcy case.

The Plaintiff presented proof only on her § 727(a)(3) cause of action at trial and limited her post-trial submissions to her § 727(a)(3) cause of action.  Thus, the Plaintiff's § 523 causes of action are deemed withdrawn or abandoned.  Similarly, no proof was offered on the Debtor's counterclaim and it is therefore deemed withdrawn or abandoned.

## CONCLUSION

For the reasons stated above, judgment is granted in favor the Defendant, and the complaint is dismissed.

It is SO ORDERED.

Albany, New York                                                                          /s/ Robert E. Littlefield, Jr.
August 22, 2014                                                                           Robert E. Littlefield, Jr.
                                                                                          Chief United States Bankruptcy Judge